UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SCOTT WADE,<br>　　　　　Plaintiff,<br>　v.<br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br>　　　　　Defendant.<br>_____ | NO. CV 16-1789-KS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Brian Scott Wade ("Plaintiff") filed a Complaint on March 16, 2016, seeking review of the denial of his application for supplemental security income ("SSI"). On March 10, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 24, 25.) On January 11, 2017, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 23.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for further proceedings. (Joint Stip. at

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

12.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 13.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 31, 2012, Plaintiff, who was born on May 18, 1967, protectively filed an application for SSI.[2] (*See* Administrative Record ("AR") 189.) Plaintiff alleged disability commencing January 1, 2009 due to "depression, mental impairments, bi-polar, severe anxiety, autism, [and] schizophrenia." (AR 219.) Plaintiff previously worked as a home attendant (DOT 354.377-014). (AR 37, 220.) After the Commissioner denied Plaintiff's applications initially (AR 121) and on reconsideration (*id.* 135), Plaintiff requested a hearing (*see id.* 152). Administrative Law Judge Philip J. Simon ("ALJ") held a hearing on January 9, 2014 (*id.* 47). Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Gregory Jones. (*See* AR 50-88.) On April 8, 2014, the ALJ issued an unfavorable decision, denying Plaintiff's application for SSI. (*Id.* 12-41.) On February 5, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his May 31, 2012 application date. (AR 19.) The ALJ further found that Plaintiff had the following severe impairments: mild degenerative disc disease of the lumbar spine; history of motor vehicle accident with multiple fractures; obesity; asthma; depression; anxiety; and a history of methamphetamine abuse. (AR 21-24.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

---

[2] Plaintiff was 45 years old on the application date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 416.963(c).

2

severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (*Id.* 24-26.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, and scaffolds; cannot be exposed to concentrated fumes, dusts, gases, unprotected heights, and dangerous machinery; and is further limited to simple routine work with no more than occasional contact with the public as a function of job duties.

(AR 27.)

The ALJ found that Plaintiff was unable to perform his past relevant work as a home attendant. (AR 37.) However, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including the representative occupations of cafeteria attendant (DOT 311.677-010), routing clerk (DOT 222.687-022), and product assembler (DOT 706.687-010). (*Id.* 39-40.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (*Id.* at 41.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's

findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

There are two issues in dispute: (1) whether the ALJ properly applied *res judicata* to an earlier ALJ decision; and (2) whether the ALJ properly evaluated the opinion of Plaintiff's treating doctor. (Joint Stip. at 2.)

\\
\\

4

**I.  Res Judicata**

Plaintiff's first contention is that the ALJ erred in applying a presumption of continuing non-disability based on a January 29, 2010 denial of Plaintiff's earlier applications by Administrative Law Judge Michael J. Kopicki ("ALJ Kopicki"). (*See* Joint Stip. at 3-4; *see also* AR 93-103 (ALJ Kopicki's decision).) In response, Defendant contends that "Plaintiff ignores . . . that the ALJ gave only *limited res judicata* effect to [ALJ Kopicki's] decision" and fails to explain how the ALJ's decision to give *limited res judicata* effect to ALJ Kopicki's decision was improper." (*Id.* at 6) (emphasis added).

**A. Applicable Law**

"The principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). "Normally, an ALJ's findings that a claimant is not disabled creates [sic] a presumption that the claimant continued to be able to work after that date." *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). "The presumption does not apply, however, if there are 'changed circumstances.'" *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1994) (citation omitted); SSR 97-4(9). Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," and a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827-28 (citations omitted); *see also* SSR 97-4(9). The presumption also does not apply "where the claimant was unrepresented by counsel at the time of the prior claim." *Lester*, 81 F.3d at 827-28 (citing *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)).

However, when a claimant overcomes the presumption of continuing non-disability, a prior ALJ's individual findings are still entitled to some *res judicata* consideration absent

5

new information not presented to the earlier adjudicator. *See* SSR 97-4(9) (if the claimant rebuts the presumption, adjudicators must give effect to certain findings contained in the final decision by an ALJ or the Appeals Council on the prior claim); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (discussing holding in *Chavez* that "a previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some *res judicata* consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge") (citing *Chavez*, 844 F.2d at 694).

## B. Discussion

The ALJ made the following assessment of the effect of ALJ Kopicki's January 29, 2010 unfavorable decision:

> [Plaintiff] fails to rebut the presumption of continuing nondisability. The record reflects no material change in his condition – at least none that indicates a greater disability – as discussed in the body of this decision . . . As a result, I must adopt [ALJ] Kopicki's findings, as explained further below. By the same token, because I conclude that there has been some slight change of circumstance – including some changes in [Plaintiff's] medically determinable impairments discussed further below – I am not obligated to accept the prior findings of [ALJ] Kopicki in these respects, and, accordingly, I give limited *res judicata* effect to the decision of [ALJ] Kopicki in this regard.

(AR 16-17.)

With respect to Plaintiff's medically determinable impairments, the ALJ found that, in addition to the severe medically determinable impairments assessed by ALJ Kopicki – mild

6

degenerative disc disease of the lumbar spine, history of vehicle accident with multiple fractures, obesity, asthma, depression, anxiety, and history of methamphetamine use (AR 95) – Plaintiff also had the nonsevere medically determinable impairments of: shingles; deviated septum requiring septoplasty; left forearm fracture; neuropathy; old right foot fractures; hypertension; and hyperlipidemia (AR 20). The ALJ correctly concluded that these additional medically determinable impairments constituted a "changed circumstance" that overcame the presumption that Plaintiff continued to be able to work after ALJ Kopicki's 2010 decision. *See Vasquez*, 572 F.3d at 598 n. 9 (9th Cir. 2009) ("claimant defeats the presumption of continuing nondisability by raising a new issue in a later application," including the existence of any new medically determinable impairment regardless of its severity).

Nevertheless, as stated above, when a claimant overcomes the presumption of continuing non-disability, a prior ALJ's individual findings are still entitled to some *res judicata* consideration absent new information not presented to the earlier adjudicator. *See* SSR 97-4(9); *see also Stubbs-Danielson*, 539 F.3d at 1173. Accordingly, it was not legal error for the ALJ to accord *res judicata* consideration to some of ALJ Kopicki's prior findings, most notably his assessment of Plaintiff's residual functional capacity, in the absence of new information. Specifically, the ALJ found that "the evidence fails to establish 'a change in circumstance' such that the residual functional capacity of [ALJ] Kopicki is no longer applicable" (AR 28), and, on that basis, adopted ALJ Kopicki's residual functional capacity assessment that Plaintiff could perform light work with the following limitations: "[Plaintiff] can . . . occasionally climb ladders, ropes, and scaffolds, cannot be exposed to concentrated fumes, dusts, gases, unprotected heights, and dangerous machinery. [Plaintiff] is further limited to simple, routine work with no more than occasional contact with the public as a function of job duties." (AR 28, 96.)

Plaintiff does not contend that the ALJ erred in his assessment of Plaintiff's RFC, only that the ALJ ignored the presence of "changed circumstances" by giving ALJ Kopicki's decision *res judicata* consideration. (*See generally* Joint Stip. at 2-5.) However, the record shows that the ALJ *acknowledged* Plaintiff's changed circumstances and, on that basis, determined that he was *not* obligated to accept ALJ Kopicki's prior findings. Plaintiff also does not contend that any of the new information post-dating ALJ Kopicki's decision required the ALJ to depart from ALJ Kopicki's nondisabilty determination and/or RFC assessment. (*See generally* Joint Stip. at 2-5.) Accordingly, the Court finds no error with respect to the ALJ's decision to accord limited *res judicata* consideration to ALJ Kopicki's RFC assessment.

## II. The ALJ's Evaluation Of The Reports Of Plaintiff's Treating Psychiatrist

### A. Plaintiff's Mental Health Records

The record shows that Plaintiff received mental health treatment from at least three different psychiatrists since 2010. First, the records show that, in 2010, Plaintiff received treatment from S. Eklund, M.D., through San Bernardino Department of Behavioral Health. (*See* AR 575-76.) During that period, Plaintiff reported depression, difficulty socializing, and bouts of anxiety or panic. (*See, e.g.*, AR 575 (3/8/10 – difficulty at birthday party, could stay only a few minutes because he can't tolerate being around people), 576 (2/8/10 – reports agoraphobia, feeling depressed and panicky).) Plaintiff did not report auditory or visual hallucinations. (*See generally* AR 575-85.)

In June 2012, Plaintiff commenced treatment with Dr. William Vicary. At his initial evaluation, Plaintiff reported that his primary problems were depression and agoraphobia and that he heard voices. (AR 331-32.) Dr. Vicary diagnosed Plaintiff with major depression and anxiety disorder. (*Id.*) Dr. Vicary saw Plaintiff every one to two months for

treatment during a period of eight months. On July 24, 2012, Plaintiff reported that he was experiencing decreased anxiety. (AR 330.) On September 21, 2012, Plaintiff reported that he felt "scattered," "tired," and depressed and was having difficulty controlling his emotions. (AR 329.)

On October 24, 2012, after seeing Plaintiff for less than six months, Dr. Vicary completed a "Mental Disorder Questionnaire Form" that stated the following: Plaintiff's current attitude and behavior are "labile" and "down" (AR 337); Plaintiff's intellectual functioning is within normal limits (AR 337); Plaintiff's mood is "3 out of 10," he is overwhelmed and hopeless with no motivation (AR 338); Plaintiff reports hearing voices in his head (AR 338); Plaintiff's ability to perform his daily activities is within normal limits (AR 338); socially, Plaintiff is "withdrawn" (AR 339); Plaintiff's ability to complete tasks and sustain concentration is hindered by "dysphoria" (AR 339); Plaintiff's ability to adapt to work or work-like situations is "compromised by depression and lack of motivation" (AR 339); Plaintiff's medications are Viibryd, a serotinergic antidepressant, and Xanax (AR 340); Plaintiff's diagnosis is major depression (AR 340); and improvement in Plaintiff's condition is "possible with further rx and meds" (AR 340).

On April 3, 2013, Dr. Vicary completed a second Mental Disorder Questionnaire Form with the following information: Plaintiff's current mental status is "labile, tearful, desperate" (AR 349); Plaintiff's intellectual functioning is within normal limits (AR 349); Plaintiff's reality contact and ability to perform daily activities is within normal limits (AR 350); socially, Plaintiff is withdrawn (AR 351); Plaintiff's concentration and task completion abilities are "impaired" (AR 351); Plaintiff's ability to adapt to work or work-like situations is "compromised by [increased] depression" (AR 351); Plaintiff's medications are Cymbalta, Viibryd, and Adderall (AR 352); Plaintiff's diagnosis is major depression and ADD (AR 352); improvement in Plaintiff's condition remains "possible with further rex and meds"

(AR 352); and Dr. Vicary last saw Plaintiff for treatment two months earlier on February 28, 2013 (AR 352).

On May 16, 2013, approximately one month after Dr. Vicary's April 3, 2013 report, Plaintiff commenced treatment with the psychiatric outpatient team at Kaiser Permanente. (*See* AR 363.) Plaintiff stated that his insurance had changed, and he needed refills of his prescriptions for Viibryd and Cymbalta. (AR 363.) Plaintiff reported no audiovisual hallucinations or mania. (AR 364.) He stated that he was "functioning at home with a lot of effort." (AR 364.) He stated that he has moodiness and tearfulness, especially while off his medication, and experienced poor motivation, poor self-esteem, poor concentration, poor memory, anxiety attacks, and increased irritability. (AR 364.) Jerry Sparks, the licensed clinical social worker (LCSW) who initially saw Plaintiff, observed that Plaintiff exhibited good grooming, an anxious mood, an appropriate affect, good insight, unimpaired judgment, good memory, and good concentration. (AR 367.) He diagnosed Plaintiff with depression NOS and generalized anxiety disorder. (AR 367.) He assessed a GAF score of 60, indicating moderate symptoms or difficulty in social, occupational, or school functioning.[3] (AR 367.)

Two days later, on May 18, 2013, Plaintiff had a psychiatric exam with Sade Udoetuk, M.D. (AR 373.) Dr. Udoetuk described Plaintiff as "a difficult historian" who reported that his medication regime is complicated and "some providers 'can't handle it.'" (AR 374.) Dr. Udoetuk observed that Plaintiff's attire was disheveled, his mood was anxious, his affect was euthymic, his insight was fair, and his judgment was unimpaired. (AR 376.) Dr. Udoetuk diagnosed major depressive disorder and agoraphobia by history and assessed a GAF score of 60. (AR 376.) Dr. Udoetuk prescribed Cymbalta, Zyprexa, and Adderall. (AR 376-77.)

---

[3] The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2012).

10

On July 3, 2013, Plaintiff saw Dr. Udoetuk for a follow up visit. Plaintiff stated that he had gone to see Dr. Vicary again because he missed his scheduled follow up appointment with Dr. Udoetuk. (AR 433-34.) Plaintiff was upset that his disability application was denied. (AR 433.) He stated that he was "trying to work" as a hair dresser. (AR 433.) Dr. Udoetuk observed that Plaintiff exhibited good grooming and a calmer affect than his first visit. (AR 434.) Dr. Udoetuk assessed Plaintiff with a GAF score of 69, indicating only mild difficulty in social, occupation, or school functioning. (AR 435.) Dr. Udoetuk adjusted Plaintiff's medications and dosages. (AR 435.)

On August 13, 2013, Plaintiff saw Dr. Udoetuk again. (AR 479.) Dr. Udoetuk described Plaintiff as being "the most . . . stable" he had ever observed Plaintiff to be. (AR 481.) He described Plaintiff's mood and affect as euthymic. (AR 480.)

On November 8, 2013, three months after Plaintiff's August 13, 2013 appointment with Dr. Udoetuk, Dr. Vicary prepared a "Report on Individual with Mental Impairment," which stated that: Plaintiff exhibited delusional behavior, inappropriate affect, anhedonia, emotional withdrawal, and difficulty concentrating or thinking (AR 558); Plaintiff exhibited anxiety with autonomic hyperactivity, recurrent severe panic attacks (AR 559); Plaintiff exhibited inflexible or maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress (AR 560). Dr. Vicary stated that Plaintiff experienced "marked" restrictions in his daily life, "marked" difficulty in maintaining social functioning, "marked" deficiencies in concentration, and "marked" frequency of episodes of deterioration or decompensation in work related or other situations. (AR 561.) Dr. Vicary stated that he expected only slight improvement in Plaintiff's condition, and he opined that Plaintiff could not respond appropriately to work, pressure, supervision, and co-workers. (AR 562.) Plaintiff now contends that the ALJ erred in failing to credit Dr. Vicary's November 8, 2013 opinion regarding the severity of Plaintiff's symptoms and functional limitations. (*See* Joint Stip. at 5-6.)

### B. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 416.927(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 416.927(c)(2)-(6) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. The ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

An ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), and "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion).

**C. Discussion**

The ALJ rejected Dr. Vicary's November 8, 2013 opinion because that opinion was "not consistent with other substantial evidence, including the doctor's own progress notes" and was "brief and conclusory." (AR 29.) The ALJ also noted that Dr. Vicary's records suggest he saw Plaintiff only three times in 2012, contain few significant objective findings, appear to rest primarily on Plaintiff's subjective complaints, and reveal conservative treatment relative to the degree of disability alleged in his November 8, 2013 opinion. (AR 29.)

Plaintiff correctly points out that the ALJ was required to set out specific reasons for rejecting Dr. Vicary's November 8, 2013 opinion. (Joint Stip. at 6.) However, Plaintiff identifies no defects in the reasons cited by the ALJ. (*See generally id.* at 5-6.) Further, the ALJ's determinations that Dr. Vicary's opinion is conclusory and inconsistent both with his own treatment notes and with the other mental health treatment records are specific and legitimate reasons supported by substantial evidence in the record for disregarding Dr. Vicary's opinion.

13

There are numerous inconsistencies between Dr. Vicary's November 8, 2013 assessment of Plaintiff's condition and his prior opinions and treating records. For example, in his November 8, 2013 opinion, Dr. Vicary indicates that Plaintiff experiences "marked" restrictions in his daily life (AR 561), whereas in his prior two opinions Dr. Vicary stated that Plaintiff's ability to perform daily activities is within normal limits (AR 338, 350). Similarly, in his November 8, 2013 opinion, Dr. Vicary described Plaintiff as exhibiting delusional behavior (AR 558) but Dr. Vicary did not describe delusional behavior in any of his prior reports or treatment records and, in fact, stated in his April 2013 report that Plaintiff's reality contact was within normal limits (AR 350). Finally, in November 2013, Dr. Vicary concludes that Plaintiff is wholly unable to respond appropriately to work, pressure, supervision, and co-workers (AR 562), but in his two prior reports Dr. Vicary stated only that Plaintiff's ability to adapt to work or work-like situations was "compromised by depression and lack of motivation" (AR 339, 351).

In addition to being inconsistent with his own treatment notes, Dr. Vicary's assessment of extreme limitations in his November 2013 opinion also conflicts with the other mental health treatment records. In the months leading up to Dr. Vicary's November 2013 opinion, Plaintiff saw Dr. Udoetuk three times. (*See* AR 373, 433, 479.) Dr. Udoetuk observed that Plaintiff had a euthymic, *i.e.* positive, affect at his first two visits, and assessed GAF scores indicating only mild to moderate limitations. (*See* AR 376, 435, 480.) Dr. Udoetuk also noted that Plaintiff stated that he was "trying to work" as a hair dresser (AR 433), a statement that is difficult to reconcile with Plaintiff's allegations of disabling mental impairments and Dr. Vicary's November 2013 assessment that Plaintiff is unable respond appropriately to work, pressure, supervision, and co-workers. Finally, at Plaintiff's final visit, Dr. Udoetuk made no reference to delusional behavior or behavior that would be inconsistent with Plaintiff's ability to work or adapt to a work-like situation, instead noting that Plaintiff was "the most . . . stable" he had ever observed Plaintiff to be. (AR 481.)

Finally, there is also no reference to delusional behavior in Plaintiff's 2010 mental health records from Dr. Eklund with San Bernardino County. (*See generally* AR 575-85.)

In sum, the ALJ did not err in according little weight to Dr. Vicary's November 2013 opinion on the grounds that it is conclusory, inconsistent with his own treatment notes, and inconsistent with Plaintiff's mental health treatment records as a whole. *See Tommasetti*, 533 F.3d at 1041 (incongruity between treating physician's opinion and the treating records is a specific and legitimate reason for rejecting that physician's opinion); *Thomas*, 278 F.3d at 957 (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."). Accordingly, the ALJ's decision must be affirmed.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 31, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE